T.C. Memo. 2014-171

UNITED STATES TAX COURT

BLONDE GRAYSON HALL, DECEASED, NEAL HALL, ADMINISTRATOR, AND NEAL HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 353-12.                    Filed August 21, 2014.

Blonde Grayson Hall and Neal E. Hall,[1] pro sese.

Harry J. Negro, for respondent.

_____

[1]This case was tried and briefed by petitioners pro sese. On June 23, 2014, after the posttrial briefs were filed, Mark E. Cedrone entered an appearance as counsel for petitioners. Blonde Grayson Hall died on June 3, 2014, and Neal Hall was appointed administrator of her estate. On August 18, 2014, the Court granted petitioners' motion to substitute party and to correct caption.

[*2]        MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined deficiencies, additions to tax, and accuracy-related penalties with respect to petitioners as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(a) |
|------|-----------|------------------|----------------------|
| 2004 | $7,381 | $1,845.25 | $1,476.20 |
| 2005 | 6,879 | 1,600.25 | 1,375.80 |
| 2006 | 37,433 | --- | 7,486.60 |

After concessions by the parties,[2] the issues for decision are:  (1) whether petitioners overstated car and truck expenses for the taxable years 2004, 2005, and 2006 (years at issue); (2) whether petitioners overstated travel expenses for the taxable years 2005 and 2006; (3) whether $54,832.40 of deductions claimed on the law office of Hall & Associates Schedule C, Profit or Loss From Business, for professional and legal expenses for the taxable year 2006 should be reclassified as a miscellaneous itemized deduction on Schedule A, Itemized Deductions; (4) whether petitioners overstated the loss claimed on Schedule E, Supplemental

---

[2]Petitioners concede that they are not entitled to deduct $15,233 of advertising expenses claimed on Schedule C, Profit or Loss From Business, for the taxable year 2004.  Respondent concedes that petitioners are entitled to the full amounts of deductions claimed for legal and professional expenses on Schedules C for the taxable years 2004 and 2005.  Respondent also concedes that $23,840 of legal and professional expenses that he disallowed in the notice of deficiency are deductible on Schedule C for the taxable year 2006.

**[*3]** Income and Loss, for the taxable year 2006; (5) whether petitioners are liable for accuracy-related penalties for the taxable years 2004, 2005, and 2006 under section 6662(a);[3] (6) whether petitioners are liable for additions to tax under section 6651(a)(1); and (7) whether Mr. Hall is entitled to relief from joint and several liability under section 6015.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, Mr. Hall and Mrs. Hall resided in Pennsylvania.

Blonde Grayson Hall obtained her license to practice law in 1982. Mrs. Hall was a practicing attorney during the years at issue and operated her legal practice under the name Law Offices of Hall & Associates (Hall & Associates). Mrs. Hall reported the income and expenses associated with Hall & Associates on Schedules C of Mr. Hall and Mrs. Hall's tax returns for the years at issue.

Neal E. Hall is an ophthalmologist. Mr. Hall is the sole shareholder of Ophthalmic Associates, Inc. (Ophthalmic Associates), a subchapter S corporation.

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] The nonpassive losses from Ophthalmic Associates were reported on Schedules E of Mr. Hall and Mrs. Hall's tax returns for the years at issue.

Mr. Hall and Mrs. Hall owned three rental properties for which income and expenses were reported on Schedules E for the years at issue.

On May 16, 2006, Mr. Hall and Mrs. Hall were convicted of willful failure to file Federal income tax returns pursuant to a plea agreement in the U.S. District Court for the Eastern District of Pennsylvania. They agreed to plead guilty to three counts of willful failure to file tax returns under section 7203 for the taxable years 1999, 2000, and 2001. See Hall v. Commissioner, T.C. Memo. 2013-93, at *3. Mr. Hall and Mrs. Hall were each sentenced to 12 months' imprisonment, an additional 12 months' supervised release, and a fine of $20,000. See id. at *7. The law firm of Miller Alfano & Raspanti (Miller) was the legal counsel that represented Mr. Hall during the plea agreement proceeding before the District Court. Mrs. Hall was represented by different legal counsel, Nicholas Nastasi. See id. at *6. Hall & Associates paid $27,932.40 to Miller during the taxable year 2006 for Mr. Hall's representation.[4] Mr. and Mrs. Hall deducted the payment as a

_____

[4]Mrs. Hall did not appeal her conviction or sentence. See Hall v. Commissioner, T.C. Memo. 2013-93, at *7. Mr. Hall appealed his conviction and sentence, which were affirmed by the Court of Appeals for the Third Circuit. See United States v. Hall, 515 F.3d 186, 203 (3d Cir. 2008).

[*5] legal and professional services expense on the Hall & Associates Schedule C of their 2006 joint return.

Goldenberg Rosenthal (Goldenberg) was an accounting firm that was hired in 2006 to perform forensic accounting services to ascertain Mr. and Mrs. Hall's correct tax liabilities for the taxable years 1998 through 2001. Stuart Katz was an accountant at Goldenberg who worked on the forensic accounting project. To determine Mr. Hall and Mrs. Hall's correct tax liability, Goldenberg had to determine the income and expenses of Hall & Associates and Ophthalmic Associates as well as other items of income and deductions for Mr. Hall and Mrs. Hall. During 2006 Hall & Associates paid Goldenberg $26,900 for the forensic accounting services. Mr. Hall and Mrs. Hall deducted the payment as a legal and professional services expense on the Hall & Associates Schedule C of their 2006 joint return.

On May 18, 2007, Mr. Hall and Mrs. Hall filed joint Federal income tax returns for the taxable years 2004, 2005, and 2006. On November 10, 2011, respondent issued to Mr. Hall and Mrs. Hall a notice of deficiency for the years at issue. They timely filed a petition disputing the determinations in the notice of deficiency.

[*6]                               OPINION

The Commissioner's determinations in a notice of deficiency are generally

presumed correct, and the taxpayers bear the burden of proving that the

determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

(1933).

Deductions are a matter of legislative grace, and the taxpayers bear the

burden of proving that they are entitled to any deduction claimed.  Rule 142(a);

INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

v. Helvering, 292 U.S. 435, 440 (1934).  Section 6001 requires taxpayers to

maintain records sufficient to establish the amount of each deduction.  See also

sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for ordinary and necessary expenses that

a taxpayer pays in connection with the operation of a trade or business.  Boyd v.

Commissioner, 122 T.C. 305, 313 (2004).  To be "ordinary" the expense must be

of a common or frequent occurrence in the type of business involved.  Deputy v.

du Pont, 308 U.S. 488, 495 (1940).  To be "necessary" an expense must be

"appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290

U.S. at 113.  Additionally, the expenditure must be "directly connected with or

[*7] pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Section 262(a) disallows deductions for personal, living, or family expenses.

If a taxpayer establishes that an expense is deductible, but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of her own making. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274 overrides the Cohan rule with regard to certain expenses. See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 requires stricter substantiation for travel, meals, and certain listed property. Section 274(d) provides that no deduction shall be allowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the time and place of the expense; and (3) the business purpose of the

[*8] expense. See Oswandel v. Commissioner, T.C. Memo. 2007-183, 2007 Tax Ct. Memo LEXIS 185, at *7. Even if such an expense would otherwise be deductible, section 274 may still preclude a deduction if the taxpayer does not present sufficient substantiation. Sec. 1.274-5T(a), Temporary Income Tax Regs., supra. However, in the alternative, each element of an expenditure or use may be established by the taxpayer's own written or oral statement "containing specific information in detail as to such element" combined with corroborative evidence sufficient to establish such element. Sec. 1.274-5T(c)(3)(i)(A) and (B), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

1. Car and Truck Expenses

Mr. Hall and Mrs. Hall claimed on Schedules C deductions for car and truck expenses of $6,463, $8,621, and $8,900 for the taxable years 2004, 2005, and 2006, respectively. Respondent determined that they were allowed deductions of $1,288, $1,760, and $1,818 for the taxable years 2004, 2005, and 2006, respectively.

Mr. Hall and Mrs. Hall's car and truck expenses are subject to the heightened substantiation requirements of section 274(d). See secs. 274(d)(4), 280F(d)(4)(A)(i). As applicable to vehicle expenses, section 274(d) requires a taxpayer to substantiate: (1) the mileage; (2) the time and place of the use; and (3)

[*9] the business purpose of the use. See Solomon v. Commissioner, T.C. Memo. 2011-91, 2011 Tax Ct. Memo LEXIS 90, at *8.

Mrs. Hall did not maintain a contemporaneous mileage log. Mr. Katz testified that he based the number of miles driven on discussions with Mrs. Hall. Mr. Katz claimed that he reviewed documentation in order to determine the number of miles driven. The documentation that Mr. Hall and Mrs. Hall offered into evidence to substantiate the number of miles driven consisted of seven parking receipts, an equipment lease, a help wanted advertisement, a phone message slip, and a few other documents. The evidence they submitted does not demonstrate that Mrs. Hall incurred mileage expenses in amounts greater than those respondent allowed in the notice of deficiency. Accordingly, we sustain respondent's determinations in the notice of deficiency.

2. Travel Expenses

Mr. Hall and Mrs. Hall claimed on Schedules C deductions for travel expenses of $14,975 and $9,007 for the taxable years 2005 and 2006, respectively. Respondent determined that Mr. Hall and Mrs. Hall were allowed deductions of $13,748 and $5,587 for the taxable years 2005 and 2006, respectively.

Mr. Hall and Mrs. Hall failed to demonstrate that Mrs. Hall paid travel expenses in amounts greater than those respondent allowed in the notice of

**[\*10]** deficiency.  Accordingly, we sustain respondent's determinations in the notice of deficiency.

3.  <u>Legal and Professional Expenses</u>

Mr. Hall and Mrs. Hall deducted the $26,900 payment to Goldenberg on the Hall & Associates Schedule C of their 2006 joint return.  Respondent disallowed the deduction for the $26,900 payment and reclassified the amount as a Schedule A miscellaneous deduction.

Petitioners argue that the $26,900 Hall & Associates paid to Goldenberg in 2006 related to the forensic accounting services performed only for Hall & Associates.  Petitioners argue that Mr. Hall and Mrs. Hall did not pay the fees they owed to Goldenberg for the forensic accounting services performed for Ophthalmic Associates and for them as individuals.  Therefore, they contend that the $26,900 payment should be a deduction on Schedule C.  Respondent argues that the $26,900 payment should be reclassified as a Schedule A miscellaneous deduction because the forensic accounting services were performed for Hall & Associates, Ophthalmic Associates, and Mr. Hall and Mrs. Hall as individuals.

Petitioners' argument is contradicted by the testimony of Mr. Katz.  Mr. Katz testified that Goldenberg was hired to perform forensic accounting services for Hall & Associates, Ophthalmic Associates, Mr. Hall, and Mrs. Hall.  Mr. Katz

**[*11]** testified he did not recall Goldenberg ever invoicing Ophthalmic Associates. Instead, Mr. Katz testified that Goldenberg "billed Hall and Associates for all of the forensic work". Mr. Hall and Mrs. Hall offered into evidence two invoices from Goldenberg which were addressed to Blonde Grayson Hall at the business address of Hall & Associates. They did not offer any invoices that were addressed to Ophthalmic Associates or to them at their home address. It is unlikely that Goldenberg intended to separately bill Hall & Associates, Ophthalmic Associates, and Mr. Hall and Mrs. Hall for their specific services but send invoices only to Mrs. Hall at the business address of Hall & Associates.

Mr. Hall and Mrs. Hall have not provided sufficient evidence for us to find that the $26,900 payment related to the services performed only for Hall & Associates. Mr. Katz' testimony and the Goldenberg invoices indicate that Goldenberg sent invoices to Mrs. Hall at the business address of Hall & Associates for the services performed for Hall & Associates, Ophthalmic Associates, and Mr. Hall and Mrs. Hall as individuals. Accordingly, we find that the entire $26,900 should not be reported on Schedule C of Mr. Hall and Mrs. Hall's 2006 joint return as a business expense of Hall & Associates.

[*12] Petitioners bear the burden of proving what portion of the $26,900 payment to Goldenberg related to services performed by Hall & Associates. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84.

At trial Mrs. Hall asked Mr. Katz to allocate the time he spent on the forensic accounting project between Hall & Associates and Ophthalmic Associates. Mr. Katz testified that he spent 30% of his time on Ophthalmic Associates and 70% of his time on Hall & Associates. We note that Mrs. Hall's question was phrased so as to exclude the amount of time that Mr. Katz worked on Mr. Hall and Mrs. Hall's personal income and deductions, which included those relating to three rental properties for the years at issue. Furthermore, under cross-examination Mr. Katz admitted that his estimate was "really a guesstimate in my mind." As a result, Mr. Katz' testimony does not establish the portion of the $26,900 payment that should be allocated to Hall & Associates. We also note that there were other Goldenberg employees besides Mr. Katz who worked on the forensic accounting project. Mr. Hall and Mrs. Hall failed to provide sufficient evidence for us to determine the portion of the $26,900 payment allocable to Hall & Associates. Accordingly, we hold that the $26,900 is properly reported as a Schedule A miscellaneous deduction.

**[\*13]** In 2006 Mr. Hall and Mrs. Hall paid Miller $27,932.40 for legal work for Mr. Hall. Mr. Hall and Mrs. Hall deducted the $27,932.40 payment to Miller on the 2006 Hall & Associates Schedule C. Respondent disallowed the payment to Miller as a deduction on the 2006 Hall & Associates Schedule C and reclassified the amount as a Schedule A miscellaneous deduction.

Generally, taxpayers may not deduct expenses of another person and may not deduct personal expenses. See Deputy v. du Pont, 308 U.S. 488 (1940). "Where expenses of another are paid in order to protect a taxpayer's business, the taxpayer, in limited circumstances, may be allowed to deduct the expenses." Capital Video Corp. v. Commissioner, T.C. Memo. 2002-40, 2002 Tax Ct. Memo LEXIS 42, at \*8, aff'd, 311 F.3d 458 (1st Cir. 2002).

In Lohrke v. Commissioner, 48 T.C. 679, 688-689 (1967), the Court adopted a two-prong test for analyzing whether a taxpayer may deduct the legal expenses of another. For the first prong the Court must "ascertain the purpose or motive which cause the taxpayer to pay the obligations of the other person." Id. at 688. "To meet this prong, the expense must have been made primarily to benefit the taxpayer's business; any benefit conferred on the party whose expenses are being paid must be only incidental." Capital Video Corp. v. Commissioner, 311 F.3d at 464 (citing AMW Invs., Inc. v. Commissioner, T.C. Memo. 1996-235,

**[\*14]** 1996 Tax Ct. Memo LEXIS 255, at \*13-\*14).  For the second prong the Court must determine whether the expense "is an ordinary and necessary expense of the individual's trade or business; that is, is it an appropriate expenditure for the furtherance or promotion of that trade or business?"  Lohrke v. Commissioner, 48 T.C. at 688.  The second prong requires that the origin of the expense arises in connection with the business activities of the taxpayer paying the expense.  Capital Video Corp. v. Commissioner, 311 F.3d at 465.

Petitioners argue that the payment to Miller to represent Mr. Hall was made to protect the business interests of Hall & Associates.  Mr. Hall testified that Mrs. Hall, on behalf of Hall & Associates, would perform legal work for Ophthalmic Associates.[5]  Mr. Hall testified that Ophthalmic Associates did not pay Hall & Associates for its services.  Mrs. Hall testified that for the years at issue, the substantial gross receipts of Hall & Associates did not include any payments from Ophthalmic Associates.

---

[5]Mr. Hall and Mrs. Hall failed to provide any invoices or documentation substantiating the legal work Mrs. Hall claimed to have performed for Ophthalmic Associates.  Furthermore, we note that Mrs. Hall was the secretary and treasurer of Ophthalmic Associates.  As a result, if she did perform any work for Ophthalmic Associates, it was most likely in her role as secretary and treasurer, not on behalf of Hall & Associates.

[*15] Mr. Hall was the primary beneficiary of the payment to Miller. Miller's representation of Mr. Hall was to benefit him in his prosecution for willfully failing to file tax returns for the taxable years 1999, 2000, and 2001.[6] The benefit conferred on Mr. Hall was not incidental. Petitioners have failed to prove that the payment to Miller was a business expense that benefited Hall & Associates. As a result, petitioners have failed to satisfy the first prong of the Lohrke test. See Capital Video Corp. v. Commissioner, 311 F.3d at 464. Additionally, the payment to Miller arose from Mr. Hall's failure to file tax returns. The payment did not arise in connection with the business activities of Hall & Associates. As a result, petitioners have also failed to satisfy the second prong of the Lohrke test. See Capital Video Corp. v. Commissioner, 311 F.3d at 465. Accordingly, we hold that respondent properly disallowed the payment to Miller as a deduction on Schedule C and reclassified the amount as a Schedule A miscellaneous deduction.

4. Loss Limitation for S Corporation

Mr. Hall and Mrs. Hall claimed a loss deduction of $33,431 from Ophthalmic Associates on Schedule E of their tax return for the taxable year 2006.

---

[6]Mr. Hall was sentenced to 12 months' imprisonment, an additional 12 months' supervised release, and a fine of $20,000.

**[\*16]** Respondent determined that the loss deduction was limited to Mr. Hall's basis in Ophthalmic Associates, $21,245.

Ophthalmic Associates is an S corporation, and Mr. Hall is the sole shareholder. Losses deductible by a shareholder are limited to the shareholder's basis in the corporation. See sec. 1366(d). As a result, losses cannot exceed the sum of the shareholder's adjusted basis in his stock in the S corporation and the shareholder's adjusted basis in any indebtedness of the S corporation to the shareholder. Sec. 1366(d)(1)(A) and (B). The shareholder bears the burden of establishing his basis in an S corporation. See Broz v. Commissioner, 137 T.C. 46, 60 (2011), aff'd, 727 F.3d 621 (6th Cir. 2013).

Goldenberg did not prepare a basis schedule for Mr. Hall's basis in Ophthalmic Associates. Instead, Mr. Katz testified that he analyzed gross receipts to estimate Mr. Hall's basis. Mr. Hall and Mrs. Hall did not offer into evidence the purported analysis used by Mr. Katz to estimate Mr. Hall's basis. Instead, Mr. Hall and Mrs. Hall offered into evidence monthly bank statements for Ophthalmic Associates for January 2005 and December 2006. We note that Mr. Hall and Mrs. Hall did not share these bank statements with respondent before trial pursuant to the Court's pretrial order. Mrs. Hall testified that during the weekend before trial she realized that two of the deposits were actually loans made to Ophthalmic

**[\*17]** Associates. Mr. Hall and Mrs. Hall did not provide sufficient evidence for us to find that these amounts were loans. We are not required to accept Mr. Hall and Mrs. Hall's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We find that petitioners have failed to prove that Mr. Hall and Mrs. Hall had a basis in Ophthalmic Associates in an amount greater than respondent determined. Accordingly, we sustain respondent's determination.

5. Accuracy-Related Penalty

Respondent determined that Mr. Hall and Mrs. Hall were liable for section 6662(a) accuracy-related penalties of $1,476.20, $1,375.80, and $7,486.60 for the taxable years 2004, 2005, and 2006. Respondent concedes that they reasonably relied upon Goldenberg with respect to respondent's adjustments of $15,233 to the Schedule C advertising expense for the taxable year 2004 and of $12,186 to the loss from Ophthalmic Associates on Schedule E for the taxable year 2006. As a result, respondent now asserts the accuracy-related penalty for adjustments to: (1) Schedule C car and truck expenses of $5,275, $6,861, and $7,082 for the taxable years 2004, 2005, and 2006; (2) Schedule C travel expenses of $1,227 and $4,430 for the taxable years 2005 and 2006; and (3) Schedule C legal and professional expenses of $54,832.40 for the taxable year 2006.

[*18] Section 6662(a) imposes an accuracy-related penalty equal to 20% of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, negligence or disregard of rules or regulations. Sec. 6662(b)(1). Respondent contends that the underpayment of tax is attributable to negligence. For purposes of section 6662, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985) (stating that negligence is lack of due care or failure to do what a reasonably prudent person would do under the circumstances); sec. 1.6662-3, Income Tax Regs. Negligence also includes any failure to exercise ordinary and reasonable care in the preparation of a tax return or any failure to keep adequate books and records and to properly substantiate items. Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 7491(c) provides that the Commissioner bears the "burden of production" with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his "burden of production", however, the "burden of proof" remains with the taxpayer,

**[*19]** including the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Mr. Hall and Mrs. Hall have failed to substantiate the car and truck expenses and travel expenses that respondent disallowed.  They have failed to provide sufficient evidence that the payments to Miller and Goldenberg were expenses solely of Hall & Associates.  Accordingly, respondent has come forward with sufficient evidence indicating that it is appropriate to impose the accuracy-related penalty.  We find that respondent has met his burden of production with respect to negligence.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  See Higbee v. Commissioner, 116 T.C. at 448.  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners have the

**[*20]** burden of proving that the penalty is inappropriate because of reasonable cause under section 6664. See Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447.

Petitioners appear to argue that Mr. Hall and Mrs. Hall's tax returns for the years at issue were prepared by Goldenberg and that any errors on the returns were not due to negligence by Mr. Hall and Mrs. Hall. "Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item." <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. 43, 98 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002). The good-faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. <u>Id.</u> (citing <u>United States v. Boyle</u>, 469 U.S. 241 (1985)); sec. 1.6664-4(b), Income Tax Regs. Whether a taxpayer relies on the advice and whether this reliance is reasonable hinge on the facts and circumstances of the case and the law that applies to those facts and circumstances. <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. at 98; sec. 1.6664-4(c)(1), Income Tax Regs. For reliance to be reasonable, "the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate

**[\*21]** information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. at 99.

Respondent concedes that Goldenberg is a certified public accounting firm with sufficient expertise to justify reliance. Respondent argues that Mr. Hall and Mrs. Hall did not establish that they provided necessary and accurate information to Goldenberg or that they relied on Goldenberg's judgment in good faith.

Respondent disallowed car and truck expense deductions of $5,275, $6,861, and $7,082 for the taxable years 2004, 2005, and 2006. Mr. Hall and Mrs. Hall did not provide Goldenberg with a contemporaneous mileage log. Mr. Katz testified that he prepared a schedule of business mileage on the basis of conversations with Mrs. Hall and documentation such as parking receipts, credit cards, and train tickets. Mr. Katz testified that he reviewed the schedule.[7] We note that Mr. Katz did not testify that all of the mileage on the schedule was supported by documentation. Mr. Hall and Mrs. Hall did not offer into evidence the documentation they allegedly provided to Goldenberg to support Mrs. Hall's business mileage. Instead, they offered into evidence seven parking receipts, an

---

[7]We note that Mr. Katz also testified that while he supervised the preparation of the returns, another employee at Goldenberg reviewed all the information provided to Goldenberg in order to prepare the returns.

**[*22]** equipment lease, a help wanted advertisement, a phone message slip, and a few other miscellaneous documents. We find that Mr. Hall and Mrs. Hall have failed to demonstrate that they provided Goldenberg with accurate and necessary information to determine the car and truck expense deductions claimed on Schedules C for the years at issue.

Respondent disallowed travel expense deductions of $1,277 and $4,430 for the taxable years 2005 and 2006. We find that Mr. Hall and Mrs. Hall have failed to demonstrate that they provided Goldenberg with accurate and necessary information to determine the Schedule C travel expenses for the taxable years 2005 and 2006.

Respondent disallowed the $26,900 payment to Goldenberg and the $27,932.40 payment to Miller as a deduction on Schedule C of Mr. Hall and Mrs. Hall's 2006 joint return and reclassified the amounts as a Schedule A miscellaneous deduction.

Mr. Katz testified that Goldenberg was hired to perform forensic accounting services for Hall & Associates, Ophthalmic Associates, and Mr. Hall and Mrs. Hall as individuals. His testimony indicated that the $26,900 payment to Goldenberg was for forensic accounting services performed not only for Hall & Associates but also for Ophthalmic Associates and Mr. Hall and Mrs. Hall as

[*23] individuals.  We find no credibility in Mrs. Hall's assertion that the payment was for services performed solely for Hall & Associates.  We note that Mr. Katz did not testify that Goldenberg made the decision to deduct the expense on Schedule C.

Petitioners argue that the payment to Miller to represent Mr. Hall was made to protect the business interests of Hall & Associates.  Therefore, petitioners contend that Mr. Hall and Mrs. Hall properly deducted the $27,932.40 payment on Schedule C.  Mr. Katz testified that he understood that Ophthalmic Associates was a primary client of Hall & Associates.  Mr. Katz also testified that it was his understanding that Hall & Associates performed legal services for Ophthalmic Associates for which it expected to be compensated.  Under cross-examination Mr. Katz admitted that he did not know whether Ophthalmic Associates ever paid Hall & Associates for the work allegedly performed in the years at issue.  Mr. Katz could not recall whether the gross receipts reported on Schedules C for the years at issue included any amounts from Ophthalmic Associates.

Mr. Hall testified that Ophthalmic Associates did not pay Hall & Associates for its services.  Mrs. Hall testified that for the years at issue, the substantial gross receipts reported on Schedule C did not include any payments from Ophthalmic Associates.  Mr. Hall and Mrs. Hall were aware that Ophthalmic Associates never

**[\*24]** paid Hall & Associates for any of the services allegedly performed.[8] The testimony of Mr. Katz indicated that he was not aware of this fact. Accordingly, we find that Mr. Hall and Mrs. Hall did not provide accurate and necessary information to Goldenberg.

Petitioners have failed to prove that the penalty is inappropriate because of reasonable cause. Accordingly, we hold that petitioners are liable for the accuracy-related penalty under section 6662(a) for the portions of the underpayments that respondent did not concede for the 2004, 2005, and 2006 taxable years.

6. Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to file a timely return unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. Id.

---

[8]We note that Mr. Hall and Mrs. Hall failed to provide sufficient evidence for us to find that Hall & Associates performed legal services for Ophthalmic Associates.

**[\*25]** Respondent has the burden of production with respect to the section 6651(a)(1) addition to tax.  See sec. 7491(c).  To meet this burden, respondent must produce evidence showing that the addition to tax is appropriate.  See id.; Higbee v. Commissioner, 116 T.C. at 446.  Once respondent satisfies this burden, petitioners have the burden of proof with respect to exculpatory factors such as reasonable cause.  See Higbee v. Commissioner, 116 T.C. at 446-447.

Mr. Hall and Mrs. Hall filed requests to extend the time to file their 2004 return until October 17, 2005, and their 2005 return until October 15, 2006.  They filed their 2004 and 2005 returns on May 18, 2007.  Respondent has met his burden of production.  As a result, petitioners bear the burden of proving reasonable cause and lack of willful neglect.  See id. at 446.

Petitioners allege that in March 2007 the District Court ordered Mr. Hall and Mrs. Hall to file their delinquent returns by May 18, 2007.  Therefore, petitioners argue that the District Court extended the due date for Mr. Hall and Mrs. Hall's 2004 and 2005 returns until May 18, 2007.  Petitioners' argument is nonsensical.  First, the due date of an income tax return is prescribed by the Code. See sec. 6072(a).  Petitioners cite no authority that would allow the District Court to extend the due date of a tax return.  Second, Mr. Hall and Mrs. Hall's 2004 and 2005 tax returns were due on October 17, 2005, and October 15, 2006,

[*26] respectively. The alleged order of the District Court was issued in March 2007, long after the returns were already due.

Petitioners also appear to argue that Mr. Hall and Mrs. Hall had reasonable cause for the late filing of the returns because they relied on the advice of Mrs. Hall's counsel, Mr. Nastasi, in the District Court proceeding. We note that Mr. Hall and Mrs. Hall did not call Mr. Nastasi as a witness. Mrs. Hall testified that Mr. Nastasi told her that she should not file their returns until the completion of the IRS investigation and that Mr. Nastasi indicated that fraud penalties would not apply. We do not accept Mrs. Hall's testimony as proof of her attorney's advice. Moreover, we note that Mrs. Hall did not testify that Mr. Nastasi told her that Mr. Hall and Mrs. Hall would not be liable for the section 6651(a)(1) addition to tax for failing to timely file tax returns for the taxable years 2004 and 2005. Accordingly, we hold that petitioners are liable for the additions to tax under section 6651(a)(1) for the taxable years 2004 and 2005.

7. Relief From Joint and Several Liability

Petitioners argue that Mr. Hall is entitled to relief from joint and several liability for the joint tax obligations for the years at issue. Respondent argues that Mr. Hall has not established that he meets the requirements for relief.

**[*27]** A married taxpayer may elect to file a joint Federal income tax return with his or her spouse. Sec. 6013(a). Generally, married couples who file a joint return are jointly and severally liable for the entire tax shown on the return or otherwise determined to be due. Sec. 6013(d)(3). Section 6015 provides for relief from joint liability for spouses who meet the conditions of subsection (b) and it provides for equitable relief in subsection (f) when the relief provided in other subsections is not available. Olson v. Commissioner, T.C. Memo. 2009-294, 2009 Tax Ct. Memo LEXIS 300, at *12.

The Court applies a de novo scope and standard of review to a taxpayer's request for relief from joint and several liability. Porter v. Commissioner, 132 T.C. 203, 210 (2009). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004); Reilly-Casey v. Commissioner, T.C. Memo. 2013-292, at *5.

Section 6015(b)(1) authorizes the Commissioner to grant relief from joint and several liability for tax if the taxpayer requesting relief satisfies each of the following five requirements:

**[*28]**         (A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects * * * the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

"The requirements of section 6015(b)(1) are stated in the conjunctive. Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for relief offered therein." Alt v. Commissioner, 119 T.C. at 313.[9]

Respondent argues that Mr. Hall has failed to satisfy requirements (B), (C), and (D) of section 6015(b)(1).

Section 6015(b)(1)(C) provides that in order to obtain relief the requesting spouse must establish that he did not know, and had no reason to know, that there was an understatement. A requesting spouse has reason to know of an understatement "if a reasonable person in similar circumstances would have

---

[9]Mr. Hall is the requesting spouse. Mrs. Hall is the nonrequesting spouse.

[*29] known of the understatement." Sec. 1.6015-2(c), Income Tax Regs. "The facts and circumstances that are considered include, but are not limited to, * * * whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question". Id. Mr. Hall bears the burden of proving that he satisfies the requirements of section 6015(b)(1)(C). See Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), aff'd, 992 F.2d 1132 (11th Cir. 1993).

Mr. Hall testified that Mrs. Hall had been responsible for preparing and filing their tax returns since the 1980s. Mr. Hall and Mrs. Hall were both convicted of willful failure to file tax returns under section 7203 for the taxable years 1999, 2000, and 2001. They were both sentenced to 12 months' imprisonment and an additional 12 months' supervised release. The District Court observed that Mr. Hall was a "'highly educated, highly intelligent man [who has] acknowledged that [he] knew [he was] obligated to file tax returns' but 'repeatedly failed to do so.'" United States v. Hall, 515 F.3d 186, 193 (3d Cir. 2008). On appeal, the Court of Appeals noted the identical roles played in the crimes by Mr. Hall and Mrs. Hall. Id. at 202. This contradicts Mr. Hall's assertion that Mrs. Hall was entirely responsible for their tax return obligations.

[*30] Mr. Hall testified that he was not aware of the erroneous deductions claimed on the returns. Despite the fact that Mr. Hall and Mrs. Hall's failure to comply with their tax return obligations resulted in imprisonment for both, he testified he took no responsibility for their joint tax returns for the years at issue. Even if we were to believe Mr. Hall, we note that the returns for the years at issue were filed after he was convicted and sentenced to 12 months' imprisonment. Under these circumstances a reasonable person should have known that it was important to verify the correctness of the amounts reported on the joint returns. Certainly, a reasonable person in that circumstance would have inquired about the items reported on his return. See sec. 1.6015-2(c), Income Tax Regs. Indeed, at his sentencing hearing on March 21, 2007, Mr. Hall stated to the District Court: "'I assure you, * * * [Mrs. Hall] and I have taken the necessary steps to make sure we never come before this Court or any court regarding these matters.'" Hall v. Commissioner, T.C. Memo. 2013-93, at *7.[10] Nevertheless, Mr. Hall testified that he did not review the returns for the years at issue before they were filed on May 18, 2007. Section 6015(b)(1)(C) "'was not designed to protect willful blindness or

[10]Shortly after making this statement, Mr. Hall appealed his guilty plea to the Court of Appeals for the Third Circuit, arguing that his plea agreement was involuntary because it benefited Mrs. Hall more than himself. Hall, 515 F.3d at 196-197. The Court rejected Mr. Hall's argument and held that there was no error in the District Court's acceptance of his plea. Id. at 197.

[*31] to encourage the deliberate cultivation of ignorance.'" Doyel v. Commissioner, T.C. Memo. 2004-35, 2004 Tax Ct. Memo LEXIS 35, at *29 (quoting Friedman v. Commissioner, 53 F.3d 523, 525 (2d Cir. 1995), aff'g in part, rev'g in part and remanding T.C. Memo. 1993-549). Section 6015(b)(1)(C) was designed to protect the innocent, not the intentionally ignorant. Cohen v. Commissioner, T.C. Memo. 1987-537, 1987 Tax Ct. Memo LEXIS 529, at *10.[11]

Mr. Hall has failed to prove that he was not aware of the erroneous deductions reported on the joint returns for the years at issue. Mr. Hall has also failed to prove that a reasonably prudent taxpayer in similar circumstances would not have known of the understatements. Accordingly, we find that Mr. Hall has failed to satisfy the requirements of section 6015(b)(1)(C).

Section 6015(b)(1)(D) provides that in order for a requesting spouse to obtain relief, it must be inequitable to hold him or her liable for the deficiency in

---

[11]Courts have adopted different standards to determine "reason to know" in erroneous deduction cases. Under the circumstances of this case, Mr. Hall has failed to establish that he did not have reason to know of the erroneous deductions under either standard. See Price v. Commissioner, 887 F.2d 959, 962-963 (9th Cir. 1989) (standard used by multiple courts of appeals); Bokum v. Commissioner, 94 T.C. 126, 148 (1990) (standard used by this Court), aff'd, 992 F.2d 1132 (11th Cir. 1993); see also Doyle v. Commissioner, 94 Fed. Appx. 949, 951 (3d Cir. 2004) (stating that taxpayer failed to establish she did not have reason to know of erroneous deductions under both Price and Bokum standards), aff'g T.C. Memo. 2003-96.

**[\*32]** tax attributable to such understatement. "All of the facts and circumstances are considered in determining whether it is inequitable to hold a requesting spouse jointly and severally liable for an understatement." Sec. 1.6015-2(d), Income Tax Regs. The regulation specifies that some of the relevant factors are: (1) whether the requesting spouse significantly benefited, directly or indirectly, from the understatement; (2) whether the requesting spouse has been deserted by the nonrequesting spouse; and (3) whether the spouses have been divorced or separated. Id. The regulation also states that Rev. Proc. 2000-15, 2000-1 C.B. 447, provides guidance concerning the criteria to be used in determining whether it is inequitable to hold a requesting spouse jointly and severally liable. Id. The revenue procedure cited in the regulation has been superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, which in turn has been superseded by Rev. Proc. 2013-34, 2013-43 I.R.B. 397.

Section 1.6015-2(d), Income Tax Regs., provides that a relevant factor in this determination is whether the requesting spouse significantly benefited, directly or indirectly, from the understatement. Normal support is not considered a significant benefit. See Flynn v. Commissioner, 93 T.C. 355, 367 (1989). We have not found that Mr. Hall significantly benefited from the understatements.

**[*33]** We may consider whether the requesting spouse was deserted, divorced, or separated from the nonrequesting spouse. See Alt v. Commissioner, 119 T.C. at 315; sec. 1.6015-2(d), Income Tax Regs.; Rev. Proc. 2013-34, sec. 4.03(2)(a), 2013-43 I.R.B. at 400, provides that this factor will weigh in favor of relief if the requesting spouse is no longer married to the nonrequesting spouse. Mr. Hall was married to Mrs. Hall and they resided at the same address until her death.

The Court has held that a material factor is whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the nonrequesting spouse. See Alt v. Commissioner, 119 T.C. at 314 (citing Jonson v. Commissioner, 118 T.C. 106, 119 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003)). Nothing in the record suggests that Mrs. Hall hid or concealed any financial or tax information from Mr. Hall. Significantly, Mr. Hall never alleged that Mrs. Hall concealed any information from him or committed any wrongful acts against him. The record demonstrates that Mr. Hall had the opportunity to question Mr. Katz regarding the items reported on the returns but declined to do so.[12] We find that Mrs. Hall did not hide

---

[12]Mr. Hall alleged that he did not know the amounts of the deductions claimed by Hall & Associates for the years at issue. However, Mr. Katz met with Mr. Hall and Mrs. Hall to explain their returns for the years at issue. Mr. Hall signed the joint returns without asking Mr. Katz any questions regarding Hall & Associates.

**[\*34]** or conceal from Mr. Hall any information relating to their tax returns for the years at issue.

Mr. Hall bears the burden of establishing that it is inequitable to hold him liable for the deficiencies in tax attributable to the understatements.  See Rule 142(a); Flynn v. Commissioner, 93 T.C. at 359.  Mr. Hall has failed to meet his burden.  We find that under section 6015(b)(1)(D) it is not inequitable to hold Mr. Hall liable for the deficiencies in tax for the years at issue.  Since Mr. Hall failed to satisfy the requirement of section 6015(b)(1)(C) and (D), he does not qualify for relief under section 6015(b)(1).  See Alt v. Commissioner, 119 T.C. at 313.[13]

Section 6015(f) allows for an alternative means of relief for a requesting spouse who does not otherwise qualify for relief under section 6015.  Sec. 6015(f)(2).  Section 6015(f) permits relief from joint and several liability where it would be inequitable to hold the individual liable for any deficiency or unpaid tax.  Sec. 6015(f)(1).  Under subsection (f), the Commissioner may grant equitable relief to a requesting spouse on the basis of the facts and circumstances of the requesting spouse's case.  Id.  The Commissioner has published revenue procedures listing the factors the Commissioner normally considers in determining

---

[13]Accordingly, we need not discuss whether Mr. Hall satisfies the requirements of sec. 6015(b)(1)(B).

[*35] whether section 6015(f) relief should be granted.  See Rev. Proc. 2013-34,

supra.[14]  We consider these factors, however, we are not bound by them.  See

Cutler v. Commissioner, T.C. Memo. 2013-119, at *9.  Mr. Hall bears the burden

of proving that he is entitled to relief under section 6015(f).  See Rule 142(a); Alt

v. Commissioner, 119 T.C. at 311; Cutler v. Commissioner, T.C. Memo. 2013-

119, at *9.

A requesting spouse must satisfy seven threshold conditions before a

request under section 6015(f) will be considered.  See Rev. Proc. 2013-34, sec.

4.01, 2013-43 I.R.B. at 399-400.  Respondent concedes that Mr. Hall satisfies the

first six threshold conditions.  Absent certain enumerated exceptions,[15] the seventh

condition is satisfied if the "income tax liability from which the requesting spouse

seeks relief is attributable (either in full or in part) to an item of the nonrequesting

---

[14]Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. 397, 403, is effective for requests for equitable relief pending on September 16, 2013, before a Federal court.

[15]The Commissioner will consider granting relief regardless of whether the understatement or deficiency is attributable (in full or in part) to the requesting spouse if any of the following exceptions applies:  (1) attribution due solely to the operation of community property law; (2) nominal ownership; (3) misappropriation of funds; (4) abuse; and (5) fraud committed by the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400.  We note that Mr. Hall has failed to prove that he satisfies the requirements of any of these exceptions.

**[\*36]** spouse \* \* \*.  If the liability is partially attributable to the requesting spouse, then relief can only be considered for the portion of the liability attributable to the nonrequesting spouse."  Id. sec. 4.01(7).

Respondent argues that the income tax liability from which Mr. Hall seeks relief is attributable in part to items of Mr. Hall.  We find that the $26,900 payment to Goldenberg that was deducted on Schedule C is attributable to Hall & Associates and Mrs. Hall, as well as to Ophthalmic Associates and Mr. Hall.  Mr. Hall has failed to prove which portion of the $26,900 payment is attributable to Mrs. Hall or Hall & Associates.  Accordingly, we find that the full amount of the item is attributable solely to Mr. Hall.  Mr. Hall and Mrs. Hall deducted on Schedule C the $27,932.40 payment to Miller to represent Mr. Hall in the District Court proceeding.  We find that this item is attributable to Mr. Hall.  Respondent disallowed $12,186 of losses from Ophthalmic Associates claimed on Schedule E because Mr. Hall had an insufficient basis in the company.  We find that this item is attributable solely to Mr. Hall.  We hold that Mr. Hall has failed to satisfy the seventh threshold condition for the above-mentioned items.  See id.  Accordingly, Mr. Hall is not entitled to relief under section 6015(f) from the deficiencies arising from these items.

[*37] Respondent concedes that the following adjustments are not attributable to Mr. Hall: (1) the disallowance of car and truck expense deductions of $5,275, $6,861, and $7,082 for the taxable years 2004, 2005, and 2006, respectively; (2) the disallowance of travel expense deductions of $1,277 and $4,430 for the taxable years 2005 and 2006; and (3) the disallowance of the advertising expense deduction of $15,233 for the taxable year 2004. Accordingly, respondent concedes that Mr. Hall has met the seven threshold conditions for these items.

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is no longer married to the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) the requesting spouse did not know or have reason to know that there was an understatement or deficiency. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. Mr. Hall was not eligible for a streamlined determination because he was married to Mrs. Hall. See id. sec. 4.02(1).

Where a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, a requesting spouse may still be eligible for equitable relief if, taking into account all the facts

**[\*38]** and circumstances, it would be inequitable to hold the requesting spouse liable for the deficiency. See id. sec. 4.03, 2013-43 I.R.B. at 400. The guidelines list the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief: (1) marital status; (2) economic hardship; (3) in the case of an understatement, knowledge or reason to know of the items giving rise to the understatement or deficiency; (4) legal obligation; (5) significant benefit; (6) compliance with income tax laws; and (7) mental or physical health. Id. In making our determination under section 6015(f), we consider these factors as well as any other relevant factors. No single factor is determinative, and all factors shall be considered and weighed appropriately. See Pullins v. Commissioner, 136 T.C. 432, 448 (2011); Molinet v. Commissioner, T.C. Memo. 2014-109, at \*10.

The first factor is whether the requesting spouse is separated or divorced from the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.03(2)(a). Mr. Hall was married to Mrs. Hall until her recent death. Accordingly, this factor is neutral. Id.

The second factor is whether the requesting spouse will suffer economic hardship if relief is not granted. Id. sec. 4.03(2)(b). A requesting spouse suffers economic hardship if the satisfaction of the tax liability, in whole or in part, would cause him to be unable to pay reasonable basic living expenses. Id. Mr. Hall

**[\*39]** bears the burden of proving that he will suffer economic hardship if we do not grant him relief from joint and several liability. See Rule 142(a); Cutler v. Commissioner, T.C. Memo. 2013-119, at \*14. Mr. Hall has failed to prove he will suffer economic hardship if we deny him relief. Accordingly, this factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2)(b).

The third factor is whether the requesting spouse knew or had reason to know of the items giving rise to the understatement as of the date the joint return was filed. Id. sec. 4.03(2)(c)(i)(A). We found that under section 6015(b)(1)(C) Mr. Hall failed to prove that he did not know and had no reason to know of the understatements. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402, provides that the facts and circumstances that are considered in determining whether the requesting spouse had reason to know of an understatement include: (1) the requesting spouse's level of education; (2) any deceit or evasiveness of the nonrequesting spouse; (3) the requesting spouse's degree of involvement in the activity generating the income tax liability; (4) the requesting spouse's involvement in business or household financial matters; (5) the requesting spouse's business or financial expertise; and (6) any lavish or unusual expenditures compared with past spending levels.

[*40] No evidence was presented that Mrs. Hall was deceitful or hid any information from Mr. Hall in regard to the tax returns. Significantly, Mr. Hall did not allege that Mrs. Hall hid from him information pertaining to the tax returns. While Mr. Hall did not participate in Hall & Associates, he had the opportunity to question Mr. Katz regarding the items reported on Schedule C. Mr. Hall, on his own initiative, chose not to do so. Mr. Hall testified that Mrs. Hall had been responsible for preparing and filing their tax returns since the 1980s. Mr. Hall and Mrs. Hall were both convicted of willful failure to file tax returns under section 7203 for the taxable years 1999, 2000, and 2001. Mr. Hall was sentenced to 12 months' imprisonment. Despite the fact that Mr. Hall and Mrs. Hall's failure to comply with their tax return obligations resulted in imprisonment for Mr. Hall, he alleges he took no responsibility for their joint tax returns. A taxpayer cannot obtain the benefits of section 6015(f) by turning a blind eye towards the items reported on the tax return. See Levin v. Commissioner, T.C. Memo. 1987-67, 1987 Tax Ct. Memo LEXIS 63, at *11. We find that Mr. Hall failed to prove he did not know and had no reason to know of the understatements. Accordingly, this factor weighs against relief.

The fourth factor is whether the requesting spouse or the nonrequesting spouse has a legal obligation to pay the outstanding Federal income tax liability.

**[\*41]** Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor will be neutral if the spouses are not separated or divorced. Id. Mr. Hall and Mrs. Hall were married and resided together until her recent death. Accordingly, this factor is neutral.

The fifth factor is whether the requesting spouse significantly benefited from the understatement. Id. sec. 4.03(2)(e). We have not found that Mr. Hall significantly benefited from the understatements. In the context of this case, this factor is neutral. Id.

The sixth factor considers whether the requesting spouse has made a good-faith effort to comply with the income tax laws in the taxable years following the years for which relief is requested. Id. sec. 4.03(2)(f), 2013-43 I.R.B. at 402-403. Respondent concedes that Mr. Hall has made a good-faith effort to comply with the income tax laws for the years after 2006. If the requesting spouse remains married to the nonrequesting spouse and continues to file joint returns after requesting relief, then this factor will be neutral if the joint returns are in compliance with the tax laws. Id. sec. 4.03(2)(f)(ii). However, if the requesting spouse remains married to the nonrequesting spouse and files separate returns after requesting relief, then this factor will weigh in favor of relief if the returns are in compliance with the tax laws. Id. sec. 4.03(2)(f)(iii). As a result, whether Mr.

**[*42]** Hall filed joint returns or separate returns for the taxable years after 2006 will determine whether this factor is neutral or will weigh in favor of relief. Mr. Hall has failed to demonstrate whether he filed separate returns or joint returns with Mrs. Hall for the taxable years after 2006. Mr. Hall bears the burden of proof in regard to this issue. See Rule 142(a); Alt v. Commissioner, 119 T.C. at 311. Accordingly, this factor is neutral.

The seventh factor is whether the requesting spouse was in poor physical or mental health. Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403. This factor will weigh in favor of relief if the requesting spouse was in poor physical or mental health at the time the returns to which the request for relief relates were filed or at the time the requesting spouse requested relief. Id. This factor is neutral if the requesting spouse was in neither poor physical nor poor mental health. Id. Mr. Hall did not prove, or even testify, that he was in poor physical or mental health. Accordingly, this factor is neutral.

Considering all the facts and circumstances, we find that it would not be inequitable to deny Mr. Hall relief under section 6015(f).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

**[*43]** To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.