T.C. Memo. 2016-87

UNITED STATES TAX COURT

JOSEPH PATRICK BOYLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4666-09.                          Filed May 2, 2016.

Joseph Patrick Boyle, pro se.

<u>Scott T. Welch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  This case arises from a petition for review pursuant to

section 6015(e)[1] of respondent's determination that petitioner is not entitled to any

---

[1]All section references are to the Internal Revenue Code of 1986 as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

**[*2]** relief under section 6015(f) with respect to his 2003 and 2005 taxable years, and only partial relief with respect to his 2004 taxable year. At trial petitioner conceded that he is not entitled to any further relief for 2004 or any relief for 2005. The issue remaining for decision is whether petitioner is entitled to any relief under section 6015(f) for 2003. We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Louisiana at the time the petition was filed.

During 2003 and many preceding years, petitioner was self-employed full time in the business of selling printer cartridges. He devoted substantial time during business hours to his sales work and also had a side business refurbishing cartridges that he pursued during evening hours. Petitioner relied on his spouse, Patricia J. Boyle (Mrs. Boyle), to handle the bookkeeping for his business, including the preparation of invoices and payment of bills. Mrs. Boyle also managed the household finances, including payment of household bills. The Boyles maintained a joint checking account during 2003. Although petitioner had access to the account and made deposits into it, Mrs. Boyle managed the account, including writing all checks to cover petitioner's business expenses and the couple's personal expenses.

[*3]   As part of her management of business and personal finances, Mrs. Boyle also assumed responsibility for having the couple's joint Federal income tax returns prepared and for filing them. She had done so for many years prior to 2003. Mrs. Boyle would gather information for their return preparer, and then present a prepared return to petitioner for his signature. She presented petitioner with a return prepared for 2003 for his signature and advised him that she would mail it. However, Mrs. Boyle did not in fact mail the return she had petitioner sign. Respondent's account transcript for petitioner's 2003 taxable year does not indicate that petitioner received any notice with respect to the Boyles' failure to file a return or pay the tax for 2003 during 2004 or 2005. As more fully discussed hereinafter, petitioner belatedly filed a 2003 return in September 2006 when he discovered, after his wife's death, that she had not done so. The first notice petitioner received from respondent concerning any problem for his 2003 taxable year was a notice of balance due issued one month after petitioner belatedly filed a 2003 return in September 2006.

Consistent with the couple's longstanding practice, Mrs. Boyle also had the joint Federal income tax return for 2004 prepared, and she presented it to petitioner for his signature. Both petitioner and Mrs. Boyle signed the 2004 return on May 20, 2005, and it was timely filed (pursuant to an extension) on May 28,

[*4] 2005.  The 2004 return reported total income of $24,031, consisting of petitioner's self-employment income of $7,806 and Mrs. Boyle's gambling income of $16,225. The return reported a tax due of $1,861 and claimed estimated tax payments of $9,860.  No such estimated tax payments had been made, however, and on June 27, 2005, respondent assessed the tax reported as due as well as a section 6651(a)(2) addition to tax for failure to timely pay and interest. Respondent's account transcript for petitioner's 2004 taxable year records that a notice of balance due regarding that year was issued to petitioner on June 27, 2005.

Mrs. Boyle died on June 14, 2005, as a result of breast, spine, and liver cancer.  She died testate, and petitioner was the sole beneficiary under her will. After Mrs. Boyle's death, at a time not disclosed in the record but before September 12, 2006, petitioner discovered that Mrs. Boyle had not filed the 2003 return he had signed.  He thereupon had the couple's long-time return preparer prepare a joint return for 2003, which petitioner signed on September 14, 2006.[2] Petitioner filed that return (as a surviving spouse) on September 16, 2006.  The

---

[2]Although petitioner wrote "9/14/2002" in the date box next to his signature on the 2003 return, it is clear from the context and stipulations that petitioner wrote the wrong year into the date.  It has been stipulated that the 2003 return was filed on September 16, 2006, and the entry in the date box next to the return preparer's signature, immediately below, is "09/12/2006".

[*5] 2003 return reported total income of $23,210, consisting of petitioner's self-employment income of $23,089 and his wage income of $121.[3] The return reported a tax due of $3,451 with no payments or prepaid credits, resulting in an underpayment in that amount. On October 16, 2006, respondent assessed the tax reported as due, as well as additions to tax of $776 and $535 under section 6651(a)(1) and (2) for late filing and late payment, respectively, and $677 in interest.

Petitioner timely filed a joint Federal income tax return for 2005 on October 18, 2006, pursuant to an extension, as a surviving spouse. The 2005 return reported adjusted gross income of $15,085, consisting entirely of petitioner's self-employment income. The 2005 return reported taxable income of zero (after application of the standard deduction and personal exemptions) but self-employment taxes of $2,131. However, the self-employment taxes were not paid. Respondent assessed the tax reported as due as well as a $64 addition to tax under section 6654 for failure to pay estimated tax.

_____

[3]Mrs. Boyle had no income for 2003.

[*6]    Petitioner filed a Federal income tax return for 2006 that reported taxable income of approximately $600.[4]

As of trial petitioner's 2003, 2004, and 2005 tax liabilities remained unpaid.

On January 15, 2008, petitioner filed a Form 8857, Request for Innocent Spouse Relief, seeking relief from his 2003, 2004, and 2005 income tax liabilities.[5]  Specifically, petitioner requested that respondent "[r]emove penalty and interest charges which were caused by * * * [Mrs. Boyle] and allow * * * [petitioner] to pay the remaining balance in a timely manner."  Petitioner alleged that Mrs. Boyle had assumed responsibility for preparing and filing the couple's returns, presenting them to him only for purposes of his signature, and that he had no reason to suspect she was doing anything wrong at the time.  Petitioner also indicated on the Form 8857 that his highest level of education was a high school diploma, that he was not a victim of spousal abuse during 2003, 2004, or 2005, and that he did not suffer from mental or physical health problems at the time he signed the 2003, 2004, and 2005 returns or at the time he signed the Form 8857.

---

[4]Respondent so stated in his pretrial memorandum, which in the circumstances we treat as a party admission.

[5]Petitioner concedes that he is not entitled to any further relief from his 2004 and 2005 liabilities.  See supra p. 2.

**[*7]** On December 4, 2008, the Internal Revenue Service (IRS) Appeals Office issued a final determination denying petitioner's request for relief under section 6015(f) for 2003 and 2005 on the ground that the 2003 and 2005 tax liabilities were attributable solely to petitioner's income, but granting partial relief from that portion of the 2004 income tax liability attributable to Mrs. Boyle's gambling income. Petitioner timely filed a petition for review of the determination.

OPINION

Background

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse who has filed a joint return may obtain relief from joint and several liability under certain circumstances pursuant to section 6015. When the liability arises from an underpayment of tax reported as due on a return, as it does in this case, relief is available only under section 6015(f). See Hopkins v. Commissioner, 121 T.C. 73, 88 (2003). Section 6015(f) authorizes the Commissioner to grant equitable relief from joint and several liability if, taking into account all of the facts and circumstances, it is inequitable to hold the taxpayer liable for the tax.

**[*8]** In determining whether a taxpayer is entitled to equitable relief under section 6015(f), we undertake a de novo scope and standard of review. Porter v. Commissioner, 132 T.C. 203, 210 (2009). The taxpayer bears the burden of proving that he is entitled to relief. Rule 142(a); Porter v. Commissioner, 132 T.C. at 210.

Petitioner seeks relief under section 6015(f) from the additions to tax for the failure to file and to pay and the interest assessed for 2003; he does not seek relief from the underpayment itself. Petitioner argues that such relief is appropriate because he did not know that Mrs. Boyle had failed to file the return and pay the tax for that year. He learned of her failure only after her death, he contends, whereupon he filed a return for 2003. Respondent argues that section 6015 relief is available only with respect to the underpayment and not the additions to tax or interest.

We have rejected respondent's position and held that we have jurisdiction under section 6015(e)(1) to review the Commissioner's denial of equitable relief under section 6015(f) from additions to tax and interest. See Kollar v. Commissioner, 131 T.C. 191, 196-197 (2008); see also Cheshire v. Commissioner, 115 T.C. 183 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002); Knorr v. Commissioner, T.C. Memo. 2004-212; Demirjian v. Commissioner, T.C. Memo. 2004-22; Rowe

**[*9]** <u>v. Commissioner</u>, T.C. Memo. 2001-325. We therefore consider petitioner's claim that he is entitled to relief under section 6015(f) from the interest and additions to tax for 2003.

<u>Rev. Proc. 2013-34</u>

Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403, provides guidelines the Commissioner considers in determining whether a requesting spouse qualifies for equitable relief under section 6015(f).[6] Although this Court considers those guidelines when reviewing the Commissioner's denial of section 6015(f) relief, we are not bound to them; our determination ultimately rests on an evaluation of all the facts and circumstances. See <u>Pullins v. Commissioner</u>, 136 T.C. 432, 438-439 (2011); <u>Williams v. Commissioner</u>, T.C. Memo. 2015-198; <u>Sriram v. Commissioner</u>, T.C. Memo. 2012-91.

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, lists seven threshold conditions that must be satisfied before the Commissioner will consider a request for section 6015(f) relief. The Commissioner may then make a streamlined determination of equitable relief if, after meeting the threshold conditions, the

---

[6]Rev. Proc. 2013-34, 2013-43 I.R.B. 397, which modifies and supersedes Rev. Proc. 2003-61, 2003-2 C.B. 296, applies to requests for equitable relief under sec. 6015(f) filed on or after September 16, 2013, or that were pending in a case docketed with a Federal court as of that date. Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. at 403.

**[*10]** requesting spouse satisfies the three elements listed in Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. If the requesting spouse does not qualify for a streamlined determination under Rev. Proc. 2013-34, sec. 4.02, the Commissioner will determine whether the requesting spouse is nevertheless entitled to relief by considering the equitable factors listed in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400.

Respondent argues that petitioner fails to satisfy the seventh threshold condition in Rev. Proc. 2013-34, sec. 4.01--namely, that the underpayment at issue must have been attributable to the nonrequesting spouse's income--and is therefore ineligible for equitable relief.[7] This "attribution condition" was also the basis on which the Appeals Office denied any relief. It is true that all of the 2003 underpayment is attributable to petitioner's income. See supra note 3. However, petitioner is not seeking relief from the underpayment; he is seeking relief from the additions to tax and interest triggered by Mrs. Boyle's failure to timely file and pay after deceiving petitioner in that regard. In these circumstances, treating the attribution condition as an absolute bar to relief runs counter to our mandate under section 6015(e)(1)(A) "to determine the appropriate relief available" to petitioner.

---

[7]Respondent has conceded that petitioner satisfies the six other threshold conditions.

[*11] We are not bound by this guideline, and we do not believe it should be dispositive in these circumstances.  See Pullins v. Commissioner, 136 T.C. 432; Williams v. Commissioner, T.C. Memo. 2015-198; Sriram v. Commissioner, T.C. Memo. 2012-91; see also Olson v. Commissioner, T.C. Memo. 2009-294; O'Meara v. Commissioner, T.C. Memo. 2009-71 (treating a failure to meet the attribution condition as not dispositive on the availability of section 6015(f) relief).

We note further in this regard that Rev. Proc. 2013-34, sec. 4.01(7) provides several exceptions where the Commissioner may grant relief notwithstanding a failure to satisfy the attribution condition.  One such exception arises where the nonrequesting spouse's fraud is the reason for the erroneous item.  See Rev. Proc. 2013-34, sec. 4.01(7)(e).  We believe what transpired here is sufficiently analogous to the fraud exception that it should give rise to an exception to the attribution condition.  We are satisfied that Mrs. Boyle deceived petitioner concerning whether their 2003 return had been timely filed and the tax timely paid by having him sign a completed return and representing to him that she would take care of the rest.[8]  We find petitioner's testimony to this effect corroborated by the

---

[8]The sparse record in this case leaves us with mere speculation concerning why Mrs. Boyle may have gotten a 2003 return prepared, had petitioner sign it,

(continued...)

**[*12]** fact that he undertook to file a 2003 return when he discovered after her death that Mrs. Boyle had not done so. Our review of the account transcript persuades us that he filed a 2003 return <u>before</u> respondent issued any notice to him indicating that there were any problems for the 2003 taxable year. Thus, the items for which petitioner seeks section 6015(f) relief--the additions to tax for failure to timely file and pay, and the interest accruing during the period when petitioner was unaware that a 2003 return had not been filed--are attributable to Mrs. Boyle's deceit. Given the totality of the facts and circumstances, we conclude that the attribution condition should not bar equitable relief. We accordingly evaluate the appropriateness of granting section 6015(f) relief to petitioner notwithstanding the attribution condition, giving consideration to the equitable factors outlined in Rev. Proc. 2013-34, sec. 4.03.[9] Those factors are the requesting spouse's: (1) marital

---

[8](...continued)
and then failed to file it--after having dutifully done so in the past. Perhaps her deteriorating health from cancer affected her faculties or perhaps her penchant for gambling affected household finances (which she managed) to such an extent that she lacked the resources to pay the tax due and so she did not file. However, we note Mrs. Boyle's medical condition and gambling proclivity, both of which are established in the record, because either lends plausibility and credence to petitioner's claim that he was misled concerning Mrs. Boyle's filing of the 2003 return.

[9]Since the three elements listed in Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, that may give rise to streamlined relief overlap with the first three

(continued...)

[*13] status; (2) economic hardship if relief is not granted; (3) knowledge or reason to know that the tax liability would not be paid; (4) legal obligation to pay the outstanding income tax liability; (5) receipt of a significant benefit from the unpaid income tax liability; (6) compliance with income tax laws; and (7) mental and physical health.

Marital status

That the requesting spouse is no longer married to the nonrequesting spouse is a factor favoring relief. If a requesting spouse is a widower, he is treated as no longer married to the nonrequesting spouse unless he is an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability--in which case the requesting spouse is treated as still married and the factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2)(a). Petitioner was Mrs. Boyle's sole heir. He has not established that her estate's assets were insufficient to pay the liability from which he seeks relief. Consequently, this factor is neutral.

---

[9](...continued) equitable factors of Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400, we find it unnecessary to consider the three elements of Rev. Proc. 2013-34, sec. 4.02 separately.

**[*14]** <u>Economic hardship</u>

Under Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401, an economic hardship exists if the satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay basic living expenses. If denying section 6015 relief will cause the requesting spouse to suffer an economic hardship this factor favors relief; if not, this factor is neutral. <u>Id.</u> The taxpayer's financial status is assessed as of the time of trial. <u>Pullins v. Commissioner</u>, 136 T.C. at 446-447. Petitioner did not adduce evidence of his financial status and consequently has not established that he will suffer economic hardship if he must satisfy the liability. This factor is therefore neutral.

<u>Knowledge or reason to know</u>

In the case of an income tax liability that was properly reported but not paid, this factor examines whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at the time the return was filed or at the time the requesting spouse reasonably believed the return was filed. Rev. Prov. 2013-34, sec. 4.03(2)(c)(ii). In determining whether the requesting spouse had reason to know that the nonrequesting spouse would not pay the reported tax liability, one of the elements to be considered is any deceit of the nonrequesting spouse. <u>Id.</u> subpara. (iii), 2013-43 I.R.B. at 402.

**[*15]** If the requesting spouse reasonably believed the nonrequesting would pay the tax, this factor generally favors relief. Thus, if the requesting spouse had a reasonable belief that the nonrequesting spouse both filed the return and paid the tax, relief is favored.

As our previous discussion indicates, we are persuaded, by petitioner's credible testimony and his corroborating actions after he learned that the 2003 return had not been filed, that petitioner was deceived by Mrs. Boyle concerning the filing of the 2003 return. Since she, not he, managed both the business and household finances and wrote all checks, we similarly conclude that petitioner reasonably believed Mrs. Boyle had paid the tax. This conclusion is buttressed by the fact that petitioner had relied on her to handle such matters in the past, apparently without adverse consequences. Accordingly, this factor favors relief.

<u>Nonrequesting spouse's legal obligation</u>

This factor comes into effect when either the requesting or the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d). The Boyles were not divorced or separated before Mrs. Boyle's death, and there is nothing in the record to suggest the existence of

[*16] an agreement concerning either's obligation to pay the 2003 tax. Accordingly, this factor is neutral.

Significant benefit

This factor weighs against relief if the requesting spouse significantly benefited, in excess of normal support, from the unpaid liability. Id. para. (e). Normal support is measured by the circumstances of the particular parties. Estate of Krock v. Commissioner, 93 T.C. 672, 678-679 (1989). However, evidence that the requesting spouse enjoyed a lavish lifestyle weighs against relief. Rev. Proc. 2013-34, sec. 4.03(2)(e).

If the unpaid tax is small such that neither spouse received a significant benefit from its nonpayment, then this factor is neutral under the terms of Rev. Proc. 2013-34, sec. 4.03(2)(e). However, this Court treats the lack of a significant benefit as a factor favoring relief. See, e.g., Wang v. Commissioner, T.C. Memo. 2014-206. The additions to tax and interest[10] that are at issue here were relatively small and, we conclude, would not have produced a significant benefit for either spouse. This factor therefore favors relief.

_____

[10]As discussed infra, petitioner was no longer deceived about the existence of his income tax underpayment for 2003 by the time he filed a return for that year in 2006. Thus, any interest relief under sec. 6015(f) is appropriate only with respect to the period petitioner was unaware of his tax obligation because of his wife's deceit.

[*17] <u>Compliance with Federal income tax laws</u>

This factor involves an assessment of the requesting spouse's good-faith efforts to comply with income tax laws in the years following the year to which the request for relief relates. Rev. Proc. 2013-34, sec. 4.03(2)(f). Relief is favored if the requesting spouse is in compliance, disfavored if he is not, and the factor is neutral if the requesting spouse made a good-faith effort to comply with his income tax obligations but was unable to fully comply because of extenuating circumstances. <u>Id.</u> subpara. (i).

At the time of trial, petitioner's Federal income tax liabilities for 2003, 2004, and 2005 had not been paid. Petitioner did not become aware that the 2003 return had not been filed and the tax not paid until sometime during the period between his wife's June 14, 2005, death and his September 16, 2006, filing of a 2003 return. As previously discussed, we discern good faith in petitioner's having filed a 2003 return (after discovering that his wife had not) before the IRS notified him of any problem for that year.

The 2004 return that Mrs. Boyle had prepared, had petitioner sign, and timely filed showed that estimated tax had been paid for that year that exceeded the tax reported as due. While the estimated tax payments reported on the 2004 return were fictitious (and consequently there was tax due of $1,861), we are

**[*18]** persuaded, given petitioner's reliance on Mrs. Boyle to handle such matters, that petitioner was unaware of the error and thus reasonably believed that his 2004 income tax obligations had been satisfied. Petitioner first received notice that there was a problem for his 2004 taxable year when respondent issued a notice of balance due for that year on June 27, 2005. That notice was sent less than two weeks after Mrs. Boyle's death on June 14. Consequently, we find that extenuating circumstances account for petitioner's failure to take prompt action to address the failure to pay for 2004.

Petitioner timely filed his 2005 return as a surviving spouse on October 18, 2006. Petitioner's standard deduction and exemptions exceeded his adjusted gross income. He thus had no taxable income but reported self-employment tax of $2,131 plus an estimated tax addition to tax under section 6654 of $64, neither of which was paid.

Petitioner filed a return for 2006 that reported taxable income of approximately $600. Insofar as the record discloses, the 2006 return was timely filed; respondent has not alleged or shown otherwise. The record does not disclose the tax reported as due or whether petitioner paid it. There is no evidence regarding petitioner's compliance in later years.

[*19] In assessing petitioner's compliance history, we note first that petitioner timely filed his returns for 2004, 2005, and 2006. As previously discussed, petitioner reasonably believed that his 2003 return had been timely filed, and voluntarily undertook to file for that year when he learned otherwise, even though the IRS apparently had not as yet detected the failure. Thus his compliance record with respect to filing is good insofar as the record discloses.

Petitioner's payment history is another matter, warranting a closer look. With respect to 2003, we have found that petitioner reasonably believed that the tax had been paid at the time he believed the return had been filed. Likewise for 2004 he reasonably believed the tax had been paid when the return was filed; the 2004 return Mrs. Boyle presented to him for signing showed that estimated tax in excess of the reported tax liability had been previously paid. Although petitioner did not pay any estimated tax during 2005 while earning income that year in a self-employed capacity, 2005 was the year his spouse--and the manager of both his household and business finances--died. Petitioner also learned approximately two weeks after his wife's death that he had overdue taxes for 2004 as well. We thus believe these two compliance failures in 2005 occurred under extenuating circumstances.

**[\*20]** That brings us to 2006. Sometime during the second half of 2005 or the first nine months of 2006, petitioner learned that his wife had not filed a return or paid the $3,451 in tax due with respect to 2003. He filed a 2003 return in September 2006 reporting the foregoing tax, but he did not pay it. A month later he filed his 2005 return reporting a tax due and unpaid of $2,195 because he had failed to pay estimated tax during 2005. These two liabilities came on top of an already outstanding liability for 2004 that had surprised him shortly after his wife's death in June 2005. In short, petitioner experienced a cascade of three years of overdue tax, two of which he reasonably believed had been paid and all of which were overdue in 2006, a year in which his taxable income was approximately $600. We are satisfied that there were extenuating circumstances in the case of petitioner's failure to pay his 2003, 2004, and 2005 liabilities in 2006. The record is too sketchy to draw any firm conclusion for subsequent years. Nonetheless, given petitioner's conscientiousness in meeting his filing obligations, and the extent to which he was unaware of certain liabilities for extended periods, we conclude that this factor is at least neutral with respect to appropriateness of granting the section 6015(f) relief he seeks.

**[\*21]** <u>Mental or physical health</u>

The equities for relief may be affected by the requesting spouse's mental or physical health problems at the time the return was filed or was reasonably believed to have been filed, Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403, or at the time of trial, <u>see</u> <u>Pullins v. Commissioner</u>, 136 T.C. at 454; <u>Bell v. Commissioner</u>, T.C. Memo. 2011-152. However, this factor is neutral in the absence of such problems, Rev. Proc. 2013-34, sec. 4.03(2)(g), and petitioner has not identified any.

<u>Conclusion</u>

All of the Rev. Proc. 2013-34, sec. 4.03 equitable factors are neutral here except petitioner's lack of a significant benefit and knowledge or reason to know of the understatement. And the latter factor weighs very heavily in petitioner's favor. Petitioner is not seeking relief from the income tax itself, which is attributable entirely to his income. He seeks relief from the failure to file and pay additions to tax. Petitioner did not know and had no reason to know the facts that gave rise to those liabilities; to the contrary, he was misled by his spouse's actions and therefore reasonably believed that his return had been filed and his tax paid. We accordingly conclude that it would be inequitable to hold him liable for the unpaid section 6651(a)(1) and (2) additions to tax for 2003.

[*22] Petitioner also seeks relief from interest. We find it appropriate to relieve petitioner of the interest that accrued during the period in which he reasonably believed the 2003 tax had been paid. That period would run from the due date of the tax until petitioner knew the liability existed and its amount. He learned the amount of the outstanding 2003 tax liability of $1,861 no later than the date on which he signed the 2003 return that he filed; namely, September 14, 2006. Thus, we conclude that it would be inequitable to hold him liable for interest from the due date of the 2003 return through September 14, 2006.

To reflect the foregoing and the concessions of the parties,

An appropriate decision will be

entered.