T.C. Memo. 2017-144

UNITED STATES TAX COURT

NICOLE RYKE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20587-15.                         Filed July 25, 2017.

Nicole Ryke, pro se.

Alicia A. Mazurek and Robert D. Heitmeyer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  Dr. Nicole Ryke seeks relief from joint and several liability under section 6015(f) for tax reported on joint returns filed with her husband for 2009 and 2012.[1]  Dr. Ryke argues that the liabilities are attributable to tax imposed

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] on her husband's income and that she was unaware that the tax was not paid when due. The Commissioner argues that Dr. Ryke knew or had reason to know that the reported tax liabilities were not paid. We agree with the Commissioner and find that Dr. Ryke is not entitled to relief under section 6015(f).

## FINDINGS OF FACT

Dr. Ryke and Jamie Ryke married in 2004, and they are still married today. Dr. Ryke is a medical doctor who specializes in family medicine. She has no training or experience in accounting or tax law. Mr. Ryke is a self-employed attorney who has practiced both probate law and bankruptcy law.

The Rykes currently live together with their four children and share household expenses. Both Dr. Ryke and Mr. Ryke pay expenses related to their children, but Mr. Ryke pays most of their joint household expenses, including health insurance, child care, and housing costs.

During 2009 and 2012 Dr. Ryke was a medical resident. She worked long hours and cared for her then three children. She paid for her medical education with a combination of financial support from her grandfather and student loans.

---

[1](...continued)
Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] Dr. Ryke is now in her fifth year of private practice. Currently, Dr. Ryke splits her time between her private practice and a hospital where she cares for patients who are not part of her family medicine practice. During 2015 Dr. Ryke was pregnant and limited the time she spent working at the hospital but continued to serve the patients in her practice. As a result, her income declined. In 2016 Dr. Ryke resumed her work at the hospital and successfully developed her private medical practice, leading to an increase in income.

Mr. Ryke has a long history of failing to pay his debts when due. Dr. Ryke became aware of her husband's financial troubles when they purchased a home before marrying. While Dr. Ryke did not know the specifics of Mr. Ryke's financial past, she was aware that he had a low credit score and outstanding student loans. As a result, the Rykes had separate credit cards, and the mortgage on the home they purchased was in Dr. Ryke's name alone.

The Rykes filed joint Federal tax returns for 2004 through 2012. Each year Mr. Ryke gathered all of the documents necessary to prepare the joint return and gave them to an accountant, who prepared the return. Once Mr. Ryke received each return, he asked Dr. Ryke to sign it; she did so, and he filed it. Mr. Ryke regularly filed for an extension of time to file, and even then the return was often

**[*4]** filed late. Dr. Ryke had little opportunity to inspect the returns and testified that she did not examine them when she signed them.

With the exception of 2009, for each year the outstanding liability resulted from the Rykes' failure to pay the tax that was reported on the return. For 2009 part of the liability related to two income items that the Rykes did not include on their return: short-term disability payments that Dr. Ryke received and interest. Each year the Rykes reported a balance due on their return, but they did not submit payment of the balance. During each year, except with respect to the unreported income in 2009, Dr. Ryke had taxes on her wages withheld by her employer. She believed that her husband was paying the full tax liability when he filed each return. To her surprise, he was not. Dr. Ryke does not seek relief from the liability associated with the unreported income from 2009. She seeks relief only from what she considers to be her husband's shares of tax for 2009 and 2012.

In 2011 Dr. Ryke became aware that she and her husband had outstanding joint tax liabilities. She made a $53,502 payment, which was applied against their joint 2007 and 2008 tax liabilities. Dr. Ryke made the payment at the request of her husband. At the time she made the payment she believed that the $53,502 would satisfy their outstanding tax liabilities in full. When she made the payment

**[*5]** she did not inquire about the amount or source of the outstanding liabilities or whether they owed any additional tax.

Dr. Ryke learned the details of the current outstanding tax liabilities for 2009 and 2012 in May 2014. After consulting with an accountant, Dr. Ryke began filing her tax returns separately from her husband, beginning with her 2013 return. She is currently in full compliance with the tax laws.

Dr. Ryke submitted a request to the Commissioner for relief from joint and several liability for 2008 to 2012 on July 15, 2014. In her Form 8857, Request for Innocent Spouse Relief, Dr. Ryke reported $10,000 in monthly income and $8,600 in monthly expenses. Her request for 2010 and 2011 was dismissed because the liabilities had been paid. For 2008, 2009, and 2012 the Commissioner denied the request on July 17, 2015. After the request for relief was denied, the Rykes paid the remaining liability for 2008. The remaining outstanding liabilities total $55,859, relating to 2009 and 2012. Dr. Ryke filed her petition with this Court on August 14, 2015, while residing in Michigan.

[*6]                                   OPINION

Generally, married taxpayers can elect to file a joint Federal income tax return.[2] If they do, each spouse is jointly and severally liable for the entire tax liability for that year.[3] In certain circumstances, a spouse who has previously filed a joint return may seek relief from joint and several liability under section 6015. When the liability arises from an underpayment of tax reported as due on the return, relief is available only under section 6015(f).[4] Section 6015(f)(1), authorizes the Commissioner to grant relief from joint and several liability if "taking into account all of the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax".

The requesting spouse bears the burden of proving that he or she is entitled to relief under section 6015.[5] Both the scope and standard of review in cases

---

[2]Sec. 6013(a).

[3]Sec. 6013(d)(3).

[4]Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); Boyle v. Commissioner, T.C. Memo. 2016-87, at *7.

[5]Rule 142; Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

**[\*7]** where a party is requesting equitable relief from joint and several income tax liability are de novo.[6]

The Commissioner has provided guidelines for reviewing claims for equitable relief under section 6015(f) in Rev. Proc. 2013-34, 2013-43 I.R.B. 397. Although we consider these guidelines when adjudicating claims for equitable relief, we are not bound by them. While the guidelines are instructive, ultimately the Court's determination rests on an examination of all of the facts and circumstances.[7]

Under the Commissioner's guidelines a requesting spouse must meet seven threshold requirements to qualify for equitable relief.[8] Here, both parties agree that each of the seven threshold requirements has been met. Once the threshold requirements have been addressed, the Commissioner considers whether the requesting spouse qualifies for streamlined relief.[9] Dr. Ryke does not qualify for streamlined relief because she and Mr. Ryke remain married.[10] In the absence of a

---

[6]Porter v. Commissioner, 132 T.C. 203, 210 (2009).

[7]Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

[8]Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400.

[9]Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

[10]Rev. Proc. 2013-34, sec. 4.02(1).

**[\*8]** streamlined relief determination, the Commissioner conducts a fact-specific inquiry to determine whether it "is inequitable to hold an individual liable for all or part of any unpaid tax or deficiency arising from a joint return."[11]

The Commissioner's guidelines for equitable relief require an examination of all relevant facts and circumstances and list seven factors as a starting point for the inquiry.[12]  No one factor is determinative, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances."[13]  The factors "are the requesting spouse's (1) marital status; (2) economic hardship if relief is not granted; (3) knowledge or reason to know that the tax liability would not be paid; (4) legal obligation to pay the outstanding income tax liability; (5) receipt of a significant benefit from the unpaid income tax liability; (6) compliance with income tax laws; and (7) mental and physical health."[14]

The most critical inquiry for this case is whether Dr. Ryke either knew or had reason to know that the liabilities shown on the returns would not be paid.  We

---

[11]Rev. Proc. 2013-34, sec. 2.04, 2013-43 I.R.B. at 397.

[12]Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403.

[13]Rev. Proc. 2013-34, sec. 4.03(2).

[14]Boyle v. Commissioner, at \*12-\*13.

[*9] find that Dr. Ryke had both knowledge that at least some part of the tax had not been paid and reason to know that the tax reported on the returns would not be paid. Before marrying, Dr. Ryke was aware that Mr. Ryke had poor credit and was in debt. In 2011 Dr. Ryke became aware that there were outstanding joint tax liabilities. She paid $53,502 toward those tax liabilities, but she testified that she did not ask about the source of the tax debt or whether the payment would satisfy the full debt. Dr. Ryke had reason to know that her husband was not paying the amount of tax owed each year and had actual knowledge of outstanding tax liabilities. The fact that she did not know the details of those outstanding liabilities is unfortunate, but for the purpose of this inquiry, it is immaterial. Dr. Ryke had reason to know the full extent of the liabilities; the fact that she lacked actual knowledge does not release her from the tax liabilities.

We find that the remaining six factors are either neutral or weigh slightly in favor of relief but not enough to tip the scales. Dr. Ryke did not receive a significant benefit as a result of the underpayment of tax. Also, she is in compliance with the tax laws. Since filing separately Dr. Ryke has met both her filing requirements and her payment obligations. Although Dr. Ryke has made a commendable effort to comply with the tax laws and meet her tax obligations from

[*10] 2013 forward, this is simply not enough to negate her self-imposed ignorance with regard to the outstanding joint tax liabilities she owes with Mr. Ryke.

The remaining factors are neutral. The Rykes remain married, and there is no legally binding agreement between Mr. Ryke and Dr. Ryke limiting her obligation to pay the joint liabilities.[15] Dr. Ryke has not shown that she would suffer economic hardship if relief is not granted. The Commissioner explains in Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013 I.R.B. at 401, that "an economic hardship exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." According to her Form 8857, Dr. Ryke's expenses are $1,400 less than her income. During the trial Dr. Ryke testified that her medical practice and income are growing. Dr. Ryke did not offer any evidence to establish that there would be economic hardship in the absence of relief. Finally, she offered no evidence to suggest that her mental or physical health is now impaired or was impaired at the time of filing.

On the basis of the record before the Court and the testimony at trial, we find that Dr. Ryke is not entitled to relief under section 6015(f) for 2009 or 2012.

---

[15]Factor four, legal obligation, refers generally to a divorce decree or other legally binding agreement that allocates the responsibility to pay the tax. See Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402.

[*11] To reflect the foregoing,

Decision will be entered for

respondent.