T.C. Memo. 2018-156

UNITED STATES TAX COURT

ANNETTE FAYE NEITZER, Petitioner, AND RICHARD J. ARNOLDUSSEN,
Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5366-16.                    Filed September 19, 2018.

<u>Patricia A. Hintz</u>, for petitioner.

Richard J. Arnoldussen, pro se.

<u>Richard C. Grosenick</u> and Karla Nettleton (student), for respondent.

[*2]     MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review of respondent's determination that she is not entitled to relief from joint and several liability under section 6015(f) for 2012 with respect to the Federal income tax return (2012 return) that she filed jointly with intervenor, her former spouse.  If the Court determines that petitioner is entitled to relief under section 6015(f), then petitioner seeks a refund of money levied to satisfy the joint income tax liability.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts, the first supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.  Petitioner resided in Wisconsin when she timely filed her petition.  Intervenor also resided in Wisconsin when he filed his notice of intervention.

I.     Background

Petitioner holds a bachelor's degree in nursing and previously worked in the fields of surgical intensive care, emergency room nursing, and triage nursing.  In

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] 2006 she became totally disabled.  Petitioner has undergone numerous spine and hip surgeries.  She expects her condition to deteriorate over time and expects to require further medical treatment in the future.[2]  Her condition has limited her ability to work.

Petitioner and intervenor married in 2007.  They separated in August 2010 and filed for divorce in September 2010.  The divorce became final on July 14, 2014.  Intervenor owned interests in two businesses, which were the primary sources of his income.  During the pendency of the divorce petitioner maintained her own finances and paid her own expenses.  Her income consisted of payments from Social Security disability, veteran's disability, long-term disability, and temporary spousal maintenance payments from intervenor.  Petitioner did not have access to the couple's joint checking account at Johnson Bank (Johnson Bank account) during the pendency of the divorce.  Instead, she maintained her own account at Associated Bank (Associated Bank account) from which she paid her expenses.[3]

---

[2]Petitioner was 55 years old at the time of trial.

[3]Immediately before the separation the funds in the Associated Bank account consisted of $100,000 from a personal injury settlement paid to petitioner on April 5, 2010, and $38,000 petitioner transferred on May 3, 2010, from the Johnson Bank account.  The Johnson Bank account held the proceeds from the

(continued...)

[*4]  For 2010, 2011, 2012, and 2013 petitioner and intervenor filed joint Federal income tax returns.  During those years intervenor employed his business accountant to prepare the joint returns.  Petitioner agreed to file joint returns with intervenor during the divorce proceeding because she believed she was required to do so under the terms of the temporary divorce order in place before the issuance of the final divorce decree.  Petitioner and intervenor owed a liability on their 2011 tax and were assessed an addition to tax under section 6651(a) for failure to pay timely.  On December 27, 2012, they both signed Form 843, Claim for Refund and Request for Abatement, asking for abatement of the addition to tax.  On that date intervenor also sent a check from the Johnson Bank account to the Internal Revenue Service (IRS) for the 2011 tax liability, which was later returned for insufficient funds.[4]

## II.    2012 Return

Intervenor's business accountant prepared the 2012 return on the basis of information from intervenor and information petitioner provided to him through

---

[3](...continued)
sales of petitioner's home that she owned before her marriage to intervenor and a home petitioner and intervenor purchased together before their marriage.

[4]At that time petitioner did not have access to the Johnson Bank account. See supra p. 3.

[*5] her divorce attorney.  The 2012 return reported income of $276,192.

Petitioner's income totaled $16,620 and included wages, Social Security disability,

interest income, and gambling winnings.  The remainder of the income came from

intervenor's wages and shares of two businesses.  The 2012 return showed tax due

of $53,382.  Intervenor timely paid $29,208 through withholding from his wages

and $5,000 through a check from the Johnson Bank account.  The remaining

$19,174 tax liability for 2012 (2012 tax liability) was attributable solely to

intervenor.

On June 3, 2013, intervenor told petitioner to go to his business

accountant's office to sign the 2012 return for filing later that day.  Petitioner had

approximately two hours to travel to the accountant's office and sign the 2012

return before the close of business.  Upon petitioner's arrival, intervenor was in

the parking lot.  They argued in the parking lot before petitioner entered the

accountant's office.  Petitioner signed an authorization permitting the accountant

to file the 2012 return but did not review or ask for additional time to review the

2012 return.  Petitioner did not request or receive a copy of the 2012 return at the

time she signed the authorization.  Even if petitioner had requested a copy, it is not

certain that she would have been given one because intervenor instructed his

**[*6]** business accountant not to disclose to petitioner any information about his businesses or personal finances.

III.  Collection

On or about August 9, 2013, petitioner received a letter from respondent regarding the 2012 tax liability.  She contacted intervenor, who agreed to pay it. On September 25, 2013, intervenor requested but was denied an installment agreement for the 2012 tax liability.  On October 28, 2013, intervenor tendered a check to pay the balance of the 2012 tax liability, but the payment was returned for insufficient funds.  Petitioner was unaware of intervenor's failed attempts to pay the 2012 tax liability.

On or about January 1, 2014, intervenor changed the mailing address on file with respondent so that future correspondence would be mailed to his business address.  Intervenor also instructed his office staff to mark "return to sender" on any notices or other correspondence that was addressed to petitioner at his business address.  On January 23, 2014, respondent issued petitioner Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing.  The letter was addressed to petitioner but mailed to intervenor's business address.  On February 13, 2014, the letter was returned to respondent as refused or unclaimed.

**[\*7]**   On March 12 and 24, 2014, respondent issued petitioner Form 668-A(ICS), Notice of Levy, addressed to intervenor's business address, notifying petitioner of a levy on her Associated Bank account.[5]  Sometime in March 2014 intervenor reached an agreement with respondent to make monthly payments to satisfy the 2012 tax liability, but on April 7, 2014, respondent collected $21,637.93 from petitioner's Associated Bank account, which satisfied the 2012 tax liability in full. On April 10, 2014, petitioner corrected her mailing address with respondent so that future correspondence would be sent to her residence.

IV.   Divorce Settlement

On April 15, 2014, during the divorce proceedings petitioner asked the Outagamie County, Wisconsin, Circuit Court (circuit court) to order intervenor to immediately reimburse her for the funds levied from the Associated Bank account. The circuit court held intervenor in contempt for intentionally failing to disclose the 2012 tax liability in financial disclosures made to the circuit court but reserved the issue of "repayment of the income tax amount" for the final divorce hearing.

On July 17, 2014, petitioner and intervenor reached an agreement to settle their disputes and recited the terms in a hearing before the circuit court.  The

---

[5]Petitioner was unaware of the proposed levy until March 22, 2014, when she discovered her Associated Bank account had been frozen.

[*8] parties discussed reimbursement of the amount levied from petitioner's Associated Bank account during their settlement negotiations. On August 1, 2014, petitioner and intervenor signed a stipulation memorializing their settlement agreement as recited to the circuit court on July 17, 2014. A formal document addressing the disposition of each asset and liability was not prepared. On August 13, 2014, the circuit court entered a judgment of divorce effective July 17, 2014, incorporating the stipulation.

The stipulation addressed the filing of a joint Federal income tax return for 2013 and required the parties to be responsible for their own debts. It generally provided that the parties agreed to release each other from any claim that might exist on that date. However, it did not expressly reference the 2012 tax liability or the levied funds. Petitioner ultimately received $277,000 in the divorce settlement. She used part of the funds to pay off outstanding loans and bills, purchase and fix a home, adapt the home to accommodate her medical condition, and purchase a vehicle specially adapted to accommodate her medical condition. As of trial she had a qualified retirement account which held the balance of her divorce settlement, approximately $100,000.

**[*9]** V.      Request for Relief

On May 4, 2015, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, seeking relief for 2012.  Petitioner explained that at the time the 2012 return was filed she did not know about the tax liability.  She knew that intervenor's earnings in prior years had ranged from $250,000 to $300,000.  Petitioner reported that at the time the 2012 return was filed she had a credit card balance that was not being paid and a medical bill she was struggling to pay.  She also referenced a notice she received from the State of Arkansas regarding a pending sale of two pieces of property she owned to pay unpaid taxes that intervenor assured her had been paid.[6]  Petitioner reported monthly income of $1,253 and monthly expenses of $1,150 as well as $50,000 in outstanding legal fees and $11,000 in outstanding medical bills.[7]

On July 13, 2015, respondent made a preliminary determination to deny petitioner's request for relief.  Respondent determined petitioner was not eligible for relief because she did not have a reasonable expectation that the 2012 tax

_____

[6]Petitioner did not specify when she received notice of the unpaid taxes. The record contains a notice dated November 6, 2013, from the Commissioner of State Lands for the State of Arkansas notifying petitioner of a pending sale of her property to pay delinquent real estate taxes.

[7]Petitioner's financial situation at the time of trial on March 27, 2017, did not significantly differ from the financial position she reported on Form 8857.

[*10] liability would be or could be paid. On August 10, 2015, petitioner appealed the preliminary determination.

On or about August 17, 2015, the case was sent to respondent's Appeals Office (Appeals) for review. In October 2015 intervenor submitted documents to Appeals to contest petitioner's appeal. Appeals determined that petitioner met the threshold conditions to be considered for innocent spouse relief under section 6015(f) but ultimately determined that petitioner had not had a reasonable expectation that the 2012 tax liability would be paid. Appeals specified that petitioner had made no inquiry about the 2012 return before signing it, that intervenor had been having financial difficulties when the 2012 return was filed, and that petitioner had known intervenor was delinquent with mortgage payments and other household expenses during the year. Appeals also found that petitioner would not suffer economic hardship absent relief because the tax liability had been paid in full at the time of her request for relief and because she received over $270,000 in the divorce settlement. On November 24, 2015, Appeals made its final determination concluding that it was equitable to hold petitioner liable for the 2012 tax liability.

**[*11]**                                    OPINION

I.     Section 6015(f)

Section 6013 allows married taxpayers to file a joint Federal income tax

return.  If a joint return is filed, each spouse becomes jointly and severally liable

for the entire tax liability for that year.  Sec. 6013(d)(3).  In certain circumstances

a spouse may be relieved from joint and several liability under section 6015(b),

(c), or (f).  When the liability arises from an underpayment of tax reported as due

on a joint return, relief is available only under section 6015(f).  See sec.

6015(b)(1)(B), (c)(1), (f)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).

Because petitioner seeks a refund of amounts levied to satisfy an underpayment of

tax reported on a joint return, petitioner may obtain relief only under section

6015(f).

Section 6015(f)(1) authorizes the Commissioner to grant relief from joint

and several liability if, "taking into account all the facts and circumstances, it is

inequitable to hold the individual liable for any unpaid tax".  The individual

requesting relief under section 6015(f) bears the burden of proving that he or she

is entitled to relief.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002),

aff'd, 101 F. App'x 34 (6th Cir. 2004).  When the Court reviews a determination

by the Commissioner denying relief under section 6015(f), both the standard and

**[*12]** scope of review are de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

The Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability. These procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91, 103 T.C.M. (CCH) 1482, 1484-1485 (2012). The Court's determination ultimately rests on an evaluation of all the facts and circumstances. Porter v. Commissioner, 132 T.C. at 210.

Pursuant to Rev. Proc. 2013-34, sec. 4, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f). See Rev. Proc. 2013-34, sec. 4.01, 4.02, and 4.03. The requirements for relief under Rev. Proc. 2013-34, supra, are categorized as threshold or mandatory requirements, streamlined elements, and equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse

[*13] meets each streamlined element. Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors.

### A. Threshold Requirements for Granting Relief

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). The parties agree, and the Court finds, that petitioner meets the threshold requirements.

### B. Elements for Streamlined Determination

If the threshold requirements are satisfied, Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth the following requirements that a requesting spouse must satisfy to qualify for a streamlined determination by the Commissioner granting relief under section 6015(f): (1) the requesting spouse is no longer married to, is legally separated from, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in the case of an underpayment, the requesting spouse did not know or have reason to know that the nonrequesting spouse would not or could not pay the tax reported on the joint return. The requesting spouse must establish that he or she satisfies each of the

**[*14]** three requirements to receive a streamlined determination granting relief. Rev. Proc. 2013-34, sec. 4.02.

Respondent determined that petitioner did not satisfy the second and third requirements and therefore was not entitled to a streamlined determination granting relief. As discussed below, petitioner has not demonstrated that she will suffer economic hardship absent relief. Therefore, she is not eligible for a streamlined determination.

C. Factors Used To Determine Whether Relief Will Be Granted

Where a requesting spouse meets the threshold conditions but fails to qualify for a streamlined determination, the requesting spouse may still be eligible for equitable relief if, taking into account all facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See Rev. Proc. 2013-34, sec. 4.03(1), 2013-43 I.R.B. at 400. Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, provides a nonexhaustive list of the following seven factors that are considered when determining whether to grant equitable relief: (1) marital status; (2) economic hardship if relief is not granted; (3) in the case of an underpayment, knowledge or reason to know the tax liability would not be paid; (4) legal obligation to pay the outstanding tax liability; (5) significant

**[*15]** benefit derived from the unpaid tax liability; (6) compliance with the income tax laws; and (7) mental or physical health.

In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant factors. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, sec. 4.03(2); see Pullins v. Commissioner, 136 T.C. at 448; Hall v. Commissioner, T.C. Memo. 2014-171, at *37-*38.

### 1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of relief. Id. sec. 4.03(2)(a), 2013-43 I.R.B. at 400. Respondent concedes that petitioner and intervenor were no longer married when the determination was made.

### 2. Economic Hardship

Generally, economic hardship exists when collection of the tax liability will render the requesting spouse unable to meet basic living expenses. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. This factor will weigh in favor of relief where the requesting spouse will suffer economic hardship absent relief. Id. This factor may be neutral where the requesting spouse would not suffer economic hardship if

**[*16]** relief were denied. Id. A requesting spouse's current income, expenses, assets, age, employment status or history, and ability to earn are considered to determine whether the requesting spouse will face economic hardship. Id.; see sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

Petitioner contends that her age, limited income and other assets, permanent disability, and substantial current and expected obligations establish economic hardship. Petitioner's income consists of various disability payments totaling $1,400 per month.

Respondent argues that this factor is neutral because petitioner has been without the use of the levied funds since April 7, 2014. Respondent asserts that petitioner was compensated for the levied funds in the divorce settlement and that a refund of the levied funds would not reverse economic hardship but would instead result in a windfall to petitioner.

Even though reimbursement of the 2012 tax liability was an issue during petitioner and intervenor's divorce negotiations, the stipulation makes no reference to the 2012 tax liability or to the levied funds. The Court declines to read into the stipulation that the $277,000 given to petitioner included reimbursement of the levied funds. Petitioner's monthly income is approximately equal to her monthly expenses, and she has approximately $100,000 in a qualified

[*17] retirement account.  Petitioner has not shown that she is unable to pay her basic living expenses.  While the Court does not find that a refund of the levied funds would result in a windfall to petitioner, the Court finds that she has not established economic hardship.  Accordingly, this factor is neutral.

### 3.      Knowledge or Reason To Know

In an underpayment case knowledge exists when the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at the time of filing the joint return.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii).  This factor favors relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return or knew of the nonrequesting spouse's intent or ability to pay the tax liability.  This factor weighs against relief if, on the facts and circumstances, it was not reasonable for the requesting spouse to believe the nonrequesting spouse would or could pay the reported tax liability.  Notwithstanding the requesting spouse's knowledge or beliefs, this factor may favor relief if the nonrequesting spouse abused the requesting spouse or maintained control of the household finances by restricting the requesting spouse's access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging payment of the liability.  Id.

**[*18]** Factors considered when determining whether the requesting spouse knew or should have known the nonrequesting spouse would or could not pay the tax liability include: (1) the requesting spouse's level of education, (2) any deceit or evasiveness of the nonrequesting spouse, (3) the requesting spouse's degree of involvement in the activity generating the tax liability or the household or business finances, (4) the requesting spouse's business or financial expertise, and (5) the presence of lavish or unusual expenditures relative to past spending levels.

Generally, a taxpayer who signs a return is charged with constructive knowledge of its contents. Porter v. Commissioner, 132 T.C. at 211. However, knowledge is negated where the nonrequesting spouse restricted the requesting spouse's access to financial information such that the requesting spouse was not able to challenge or question the payment of tax reported as due on the return. Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii). Even though petitioner signed the authorization to file the 2012 return in haste and did not have or request time to review it, she is charged with knowledge of the tax liability reported on the return. However, because intervenor had instructed his business accountant not to disclose information to petitioner about his finances, she likely would not have learned about the tax liability even if she had inquired. Additionally, petitioner was not involved in intervenor's businesses, nor was she involved in preparing the

[*19] 2012 return beyond providing her information to intervenor's business accountant through her attorney. Petitioner was not aware of the 2012 tax liability until she received the August 9, 2013, letter from respondent.

Even if petitioner is charged with constructive knowledge of the 2012 tax liability, she had no reason to know that intervenor would not or could not pay it. At the time petitioner signed the return she had been living separately from intervenor and paying her own expenses for almost two years. She did not have access to the Johnson Bank account at that time, so she had no reason to know about the $5,000 payment made with the 2012 tax return. Although she reported on Form 8857 that she had a credit card balance and a medical bill that she was struggling to pay, that information does not reflect any knowledge of intervenor's income or financial situation at the time. She believed at the time the 2012 return was filed that intervenor's income ranged from $250,000 to $300,000. Additionally, although petitioner's Form 8857 referenced a State tax bill that intervenor failed to pay, petitioner received notice of the unpaid State taxes in November 2013, after signing the 2012 return. The Court does note that several months before signing the 2012 return petitioner cosigned Form 843 requesting abatement of a failure to timely pay addition to tax assessed against petitioner and intervenor on their 2011 Federal income tax return. However, even if that request

[*20] put petitioner on notice that intervenor had previously failed to pay a tax liability, petitioner's separation from intervenor and lack of involvement in intervenor's business outweigh that notice. The Court finds that this factor favors relief.

### 4. Legal Obligation

For purposes of this factor, a legal obligation is an obligation arising from a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. Generally, this factor favors relief where the nonrequesting spouse has the sole legal obligation for the liability and weighs against relief where the requesting spouse has the sole legal obligation. Id. This factor is neutral, however, where both spouses have a legal obligation to pay the liability or the divorce decree or agreement is silent as to any obligation to pay the liability. Id. Petitioner and respondent agree, and the Court finds, that the divorce decree is silent as to the tax liability. Accordingly, this factor is neutral.

### 5. Significant Benefit

A significant benefit is any benefit in excess of normal support. This factor favors relief where only the nonrequesting spouse benefited from the underpayment or the nonrequesting spouse benefited to the detriment of the requesting spouse. This factor is neutral where the amount of unpaid tax is so

**[\*21]** small that neither spouse benefited from the underpayment. This factor may also be neutral where the requesting spouse received a significant benefit from the underpayment but abuse or financial control by the nonrequesting spouse resulted in only the nonrequesting spouse's making decisions regarding spending. Id. sec. 4.03(e).

The Court finds petitioner did not obtain a significant benefit from the underpayment. At the time the 2012 return was filed petitioner and intervenor were living separately and maintaining separate finances. Accordingly, this factor favors petitioner.[8]

### 6. Compliance With Tax Laws

This factor considers whether the requesting spouse has made a good faith effort to comply with the income tax laws in the taxable years following the year for which relief is sought. Id. sec. 4.03(f). Petitioner and respondent agree that petitioner has been in compliance with the tax laws since the divorce. Because of her limited income, petitioner currently has no filing obligation. Therefore, the Court finds that this factor weighs in favor of relief.

---

[8]This factor is neutral under the terms of Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. 397, 402, but this Court treats the lack of a significant benefit as a factor favoring relief. See, e.g., Boyle v. Commissioner, T.C. Memo. 2016-87, at \*16.

**[*22]**        7.        <u>Mental or Physical Health</u>

This factor considers the requesting spouse's mental and physical health. <u>Id.</u> sec. 4.03(g), 2013-43 I.R.B. at 403.  This factor favors relief where the requesting spouse was in poor mental or physical health at the time the return was filed or at the time relief was requested, or at the time of trial.  <u>Id.</u>; <u>see</u> <u>Pullins v. Commissioner</u>, 136 T.C. at 454.  Consideration is given to the nature, extent, and duration of any existing condition, including its economic impact.

Petitioner has been disabled since 2006 and will remain so indefinitely.  She expects her condition to deteriorate.  Her medical condition has created numerous outstanding medical bills and limits her future earning potential.  The Court finds that this factor favors petitioner.

All of the enumerated factors are favorable to petitioner or neutral.  After consideration of all the facts and circumstances the Court determines that it is inequitable to hold petitioner jointly and severally liable for the underpayment and that petitioner is entitled to relief under section 6015(f).

II.    <u>Refund</u>

Petitioner has demonstrated that the levied funds were taken from her Associated Bank account.  Respondent concedes that if petitioner is entitled to relief, her request for a refund is timely under section 6511.  Accordingly,

[*23] petitioner is entitled to a refund of the $21,637.93 levied from her Associated Bank account.

III.    Conclusion

For the reasons stated above the Court finds that petitioner is entitled to equitable relief under section 6015(f) and a refund of the money levied from her bank account.  The Court has considered the remaining arguments made by the parties and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate decision

will be entered.